UNITED STATES OF AMERICA

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FISHERMEN'S FINEST, INC., NORTH PACIFIC FISHING, INC., and U.S. FISHING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE HONORABLE CARLOS M. GUTIERREZ, Secretary of the United States Department of Commerce,<br><br>Defendant. | Case No. C07-1574MJP<br><br>ORDER GRANTING IN PART MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND CALLING FOR LIMITED IN CAMERA REVIEW |

This matter comes before the Court on Plaintiffs' motion to compel the inclusion in the administrative record of selected documents that the National Marine Fisheries Service ("NMFS") has withheld on the basis of a claim of deliberative process privilege. (Dkt. No. 32.) The Fishing Company of Alaska has filed an amicus brief in support of the motion. (Dkt. No. 31-3.) In response to the motion, Defendant promised to produce in whole or in part many of the disputed documents; Defendant opposed production of thirty-three documents. (Dkt. No. 34.) Having considered the motion, response, and reply (Dkt. No. 36), the amicus brief, and the balance of the record, the Court GRANTS IN PART the motion to compel and orders production of twenty-eight of the documents and in camera review of the remaining five documents.

**Background**

This case is one of a trio of cases challenging fishing regulations promulgated by the Secretary of Commerce, Carlos M. Gutierrez, acting through the National Marine Fisheries

ORDER — 1

Service ("NMFS"). In this case, Plaintiffs challenge a regulation implementing Amendment 85 to the Fishery Management Plan for Groundfish of the Bering Sea and Aleutian Islands Management Area ("Amendment 85 "). Amendment 85 reallocates the total allowable catch of Pacific cod among fishing fleet sectors, reducing the share allocated to Fishermen's Finest's sector, the non-AFA trawl catcher processor (a/k/a "head and gut") sector. After Plaintiffs filed suit, Defendant filed the Administrative Record for Amendment 85. Defendant also filed a privilege log, which identified 443 documents as constituting the full administrative record. Of those, Defendant withheld 223 documents as privileged, and identified within that group 145 documents subject to the "deliberative process privilege." Through their briefing, the parties limited their dispute to thirty-three documents.[1] On July 9, 2008, Defendant notified the Court that he had further supplemented the record with previously withheld documents.[2] (Dkt. No. 47.)

**Discussion**

**I.      Legislative/Regulatory Framework**

The Magnuson-Stevens Act created a national program for the conservation and management of fishery resources. 16 U.S.C. § 1801; Yakutat, Inc. v. Gutierrez, 407 F.3d 1054, 1058 (9th Cir. 2005). The Act provides the Secretary of Commerce, acting through NMFS and eight regional fishery management councils, the authority to regulate domestic fisheries. Yakutat, 407 F.3d at 1058; see also 16 U.S.C. §§ 1811(a) & 1852(a). The North Pacific Fishery Management Council ("the Council") is responsible for preparing and recommending fisheries plans for the Bering Sea/Aleutian Islands Management area, the region at issue here. See 16

---

[1] Those thirty-three documents are Document Nos. 233, 267, 270, 271, 272, 273, 276, 281, 282, 286, 309, 313, 329, 338, 339, 340, 376, 377, 380, 384, 385, 388, 389, 391, 392, 397, 398, 400, 407, 421, 423, 425, and 433.

[2] The nine documents produced in July are Document Nos. 270, 272, 273, 276, 282, 309, 338, 389, and 425. The privilege log produced for these documents indicates that these documents were produced in redacted form. (See Dkt. No. 47-2.) Because the parties have provided no further briefing on the issue, the Court assumes that Plaintiffs continue to seek full production of these nine documents.

ORDER — 2

U.S.C. §§ 1852(a)(1)(G) & 1853.

The councils prepare fisheries plans and plan amendments through an open process of public meetings and hearings. 16 U.S.C. § 1852(h) & (i). In developing the plans, the council must consider the policies and purposes of the Magnuson-Stevens Act (the "National Standards"). 16 U.S.C. § 1853(a)(1)(C). The plans and proposed regulations implementing the plans are then submitted to NMFS for review. 16 U.S.C. § 1854(a) & (b). NMFS' role in plan development is limited — NMFS evaluates the Council's recommended plan for consistency with all applicable laws, and has authority to either approve, disapprove, or partially approve a council's proposed plan and regulations. 16 U.S.C. § 1854(a). NMFS also reviews the proposed regulations for consistency with the fishery plan and the law and either approves and publishes the proposed regulations (as a proposed rule) or rejects the regulations. 16 U.S.C. § 1854(b). Importantly, NMFS does not have authority to unilaterally substantively modify or add to the council's proposed plan or the implementing regulations. Oceana, Inc. v. Evans, No. Civ. A. 04-0811 (ESH), 2005 WL 555416, at *26 (D.D.C. March 9, 2005); Assoc. Fisheries of Me. v. Evans, 350 F. Supp. 2d 247, 253 (D. Me. 2004). NMFS may, however, make recommendations to the council regarding how the council should change the proposed plan and/or regulations to comply with the law. 16 U.S.C. § 1854(a)(3)(C), (b)(1)(B). NMFS may also make "technical changes as may be necessary for clarity" to the proposed regulations. 16 U.S.C. § 1854(b)(1)(A).

On April 8-9, 2006, the North Pacific Fishery Management Council voted to adopt Amendment 85. (AR 203, at 19.) The Council submitted Amendment 85 and the proposed implementing regulations to Defendant's designee at NOAA Fisheries on November 29, 2006. (AR 141.) The Secretary published the notice of proposed rule making regarding Amendment 85 on February 7, 2007, see 72 Fed. Reg. 5654, issued his partial approval of amendment 85 on March 7, 2007, and published the final rule on September 4, 2007. See 72 Fed. Reg. 50788.

ORDER — 3

## II. Deliberative Process Privilege

### A. Standards

Under the Administrative Procedure Act ("APA"), Defendant has an obligation to produce a full and complete administrative record for the parties' use and the Court's consideration. See Thompson v. U.S. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989). Nevertheless, several privileges apply, under which the Government may withhold production of certain documents. One of these privileges is the "deliberative process privilege." This privilege safeguards an agency's ability to "explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." Assembly of the State of Cal. v. U.S. Dept. of Commerce, 968 F.2d 916, 920 (9th Cir. 1992). Application of the exemption "turns on whether disclosure of the requested information would reveal anything about the agency's decisional process." Carter v. United States Dep't of Commerce, 307 F.3d 1084, 1088 (9th Cir. 2002). The privilege protects only expressions of opinion or recommendations, not purely factual material. See Assembly, 968 F.2d at 921-22.

To fall within the exemption, the withheld document must be both "predecisional" and "deliberative." Id. at 920. "A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. (internal quotes and citation omitted). "[The] deliberative process [privilege] covers documents . . . comprising part of a process by which governmental decisions and policies are formulated." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)  Therefore, "the agency must identify a specific decision to which the document is predecisional." Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1094 (9th Cir. 1997). A document that was prepared to support a decision already made is not predecisional. Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

ORDER — 4

A document is deliberative "if the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Assembly, 968 F.2d at 920. (internal citations and quotation marks omitted). Deliberative documents "relect[] the give-and-take of the consultative process." Petroleum Info., 976 F.2d at 1434. "To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment." Id. at 1435 (emphasis in original) ("The deliberative process privilege, we underscore, is centrally concerned with protecting the process by which policy is formulated.") (emphasis in original); see also Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1118 (9th Cir. 1988) ("[T]he document is considered to be part of the 'deliberative process' as long as it is actually . . . related to the process by which policies are formulated.") (internal quotation marks omitted) (emphasis omitted).

The deliberative process privilege is a qualified privilege that requires a balancing of the public interest in nondisclosure with the movant's need for the material. Fed. Trade Comm'n v. Warner Commc'ns, 742 F.2d 1156, 1161 (9th Cir. 1984). If the privilege applies, the Court should then determine whether the litigant's need for the materials overcomes the Government's interest in non-disclosure by considering: (1) the relevance of the evidence, (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. Id.

**B.    Application**

The withheld documents here include draft versions of the proposed rule implementing Amendment 85, emails regarding the draft language, draft transmittal documents, draft responses to comments on the proposed rule, and draft versions of the final rule. Defendant offers the declaration of Samuel D. Rausch, the Deputy Assistant Administrator for Regulatory Programs at the Department of Commerce, which provides a description of all the documents Defendant has withheld.

ORDER — 5

The parties dispute whether the withheld documents are predecisional and deliberative. As is often the case, these elements overlap here. Defendant argues that all of the documents relate to NMFS' decision to publish the final rule implementing Amendment 85 on September 4, 2007. In many cases, a decision to publish proposed and final rules would act as a decision point for determining whether preceding documents are "predecisional." See Pies v. U.S. Internal Revenue Serv., 668 F.2d 1350, 1354 (D.C. Cir. 1981) (holding that draft proposed IRS regulations are protected under the deliberative process privilege); Modesto Irrigation Dist. v. Gutierrez, 1:06-cv-00453, 2007 U.S. Dist. LEXIS 21949, at *27-28 (E.D. Cal. March 9, 2007) (explaining that final rule announcing ESA listing decision was deliberative process "decision" date). But that is not be the case here. As mentioned, NMFS and the Secretary have very limited authority in terms of developing fisheries plans and amendments to fisheries plans. The fisheries councils craft the plans; NMFS checks them for consistency with the law and then implements them through regulations. Thus, the only "decision" NMFS must make is whether the proposed fishery plan is consistent with applicable law. Documents that were "prepared in order to assist [the Secretary] in arriving at his decision" of whether to approve, disapprove, or partially approve the fisheries plan are "predecisional" documents. But any documents that only reiterate or explain an already made decision (like the plan itself, or NMFS' approval of the plan) are not "predecisional." See Petroleum Info., 976 F.2d at 1434.

More importantly, for most of the documents, it does not appear that the agency exercised any policy-making judgment. Defendant's suggestion that the withheld documents need not implicate policy-oriented judgment is incorrect. See id. at 1435 ("When material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable."). Defendant points to language in Columbia Snake River Irrigators, in which this Court quoted Assembly when explaining that "a document is deliberative 'if the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the

ORDER — 6

agency and thereby undermine the agency's ability to perform its functions.'" Columbia Snake River Irrigators Ass'n v. Lohn, C07-1388MJP, 2008 WL 750574, at *2 (W.D. Wash. March 19, 2008). As the D.C. Circuit has explained, that definition of "deliberative" — that the disclosure of the materials would discourage candor and undermine agency decisionmaking — dovetails with the requirement that the documents reflect policy-implicating judgment: "The release of materials that do not embody agency judgments — for example, materials relating to standard or routine computations or measurements over which the agency has no significant discretion — is unlikely to diminish officials' candor or otherwise injure the quality of agency decisions." Petroleum Info., 976 F.2d at 1436. Thus, Defendant must show that the withheld documents, in addition to being predecisional, are also deliberative in the sense that they implicate policy-oriented judgment.

Because NMFS has very limited policy-making authority in regards to fisheries plans, the withheld documents it generated prior to publishing the final rule generally do not implicate any potential policy-oriented decision. One notable exception would be the decision regarding whether to reject the proposed plan for inconsistency with applicable laws, including the "National Standards" in the Magnuson-Stevens Act. But none of the descriptions of the documents identified in the Rausch Declaration suggest that the withheld documents relate to the approval/rejection decision or to consideration of the National Standards. Here, most of the documents are agency staff recommendations of how to translate the Council's policy decision (i.e., Amendment 85) into regulations. Those documents are not "predecisional" to any policy-oriented decision. See id. at 1437-38 (holding that draft comprehensive land records data bank was not privileged because the process of creating it "circumscribe[d] [the agency's] exercises of discretion and judgment calls" and only implicated the agency's "technical, record-keeping" functions).

Based on this analysis, the Court makes the following rulings in regards to the withheld documents:

ORDER — 7

| Document Nos. | Def's Description / Reason for Withholding | Ruling |
|---|---|---|
| 267, 281, 286, 329, 340 | Draft versions of proposed rule with handwritten NMFS staff comments. | NOT PRIVILEGED: These documents do not relate to any "decision" nor do they implicate any policy-oriented judgment. |
| 233, 339 | E-mail among NMFS staff stating personal observations regarding meeting between NMFS and public regarding effects of Amendment 85 on allocation of cod to "head and gut" sector; e-mail regarding controversy over allocation of fish resources. | <u>IN CAMERA</u> REVIEW NECESSARY: Defendant does not identify "decision" to which these email relate. NMFS suggests that discussion relates to "the adoption of NMFS's policies," but it is not clear what those policies are given NMFS's limited role here. |
| 270, 271, 272, 273 | E-mails among NMFS staff regarding draft proposed rule language concerning general description of total allowable catch and specific catch allocations; discuss whether to address issue in preamble. | NOT PRIVILEGED: Discussions regarding how to translate policy into regulatory language is not privileged. |
| 276 | E-mail among NMFS staff with attachment containing draft proposed rule language concerning description of prohibited species catch limits allocated to cod sectors and whether issue should be addressed in preamble. | NOT PRIVILEGED: Discussions regarding how to translate policy into regulatory language is not privileged. |
| 282 | E-mail among NMFS and NOAA staff; attached is a draft document describing "hard cap" fisheries management. Provided because agency developing and considering possible options for management of CDQ Program allocation of Pacific cod. | <u>IN CAMERA</u> REVIEW NECESSARY: Although this appears to be the type of policy-related document that the privilege protects, the agency has failed to indicate to what decision it relates. |
| 309 | E-mail between NMFS staff with attachment containing staff's personal opinion on draft language for proposed rule concerning procedural history of Amendment 85. | NOT PRIVILEGED: Discussions regarding how to describe procedural history of Amendment does not implicate policy-oriented judgment. |
| 313 | E-mail between NMFS staff with attachment concerning recommendations regarding draft version of proposed rule. | NOT PRIVILEGED: Discussions regarding how to translate policy into regulatory language is not privileged. |

ORDER — 8

| | | |
|---|---|---|
| 338 | E-mail among NMFS staff regarding proposed content for draft Information Memorandum regarding Amendment 85. Attachments include draft Information Memorandum between agencies concerning proposed rule to implement Amendment 85. | NOT PRIVILEGED: These are draft transmittal documents that do not implicate any policy-oriented decision. |
| 376, 377, 389, 391, 397, 398, 400 | E-mails with attachments regarding draft Issues Advisory memorandum and draft Decision Memorandum, with staff comments. | NOT PRIVILEGED: These are post-decisional transmittal documents that relate to how to communicate an already-made decision. |
| 380 | E-mail exchange among staff regarding staff recommendations and opinions on how "best to address the use of PSC allowances in the Pacific cod fishery in the proposed rule to implement Amendment 85." | IN CAMERA REVIEW NECESSARY: Because it is not clear whether "to address" refers to a potential policy decision or to a written description of the issue, in camera review is necessary. |
| 384 | E-mail regarding draft response to comment on Amendment 85's effects on "head and gut" sector, which includes author's personal opinions on the effects. Plaintiff concedes that a portion of this document should remain redacted due to the inclusion of confidential information under 16 U.S.C. § 1881a(b). | NOT PRIVILEGED: Defendant does not suggest that these documents are predecisional to any policy decision. Nevertheless, Defendant may produce this in redacted form to protect materials confidential under the statute. |
| 385 | E-mail between NMFS staff, containing personal opinions, regarding applicability of groundfish retention standard to non-AFA catcher processor sector; initiated to assist in drafting response to comment on proposed rule. | NOT PRIVILEGED: Defendant does not suggest that these documents are predecisional to any policy decision. |
| 388, 407, 423, 425 | Draft version of portion of response to comments containing handwritten comments and recommendations of NMFS staff. | NOT PRIVILEGED: Defendant does not suggest that these documents are predecisional to any policy decision. In this context, the agency's discussion of how to respond to comments is post-decisional; the decision of how to respond to comments is not the type of decision for which underlying documents are protected. |
| 392, 421 | Draft version of final rule with NMFS staff handwritten comments and recommendations. | NOT PRIVILEGED: Does not implicate policy-oriented judgment. |

ORDER — 9

| | | |
|---|---|---|
| 433 | E-mail among NMFS staff regarding apparent inconsistency between methods for calculating sideboards for AFA trawl catcher vessels under Amendments 80 and 85; contains personal opinions and recommendations regarding best means to calculate sideboard limits and reconcile requirements of both Amendments. | IN CAMERA REVIEW NECESSARY: Although it is not clear that the agency has authority to "reconcile the requirements of both Amendments," this appears to be the type of document that implicates the agency's deliberative process. It is not clear to what "decision" this document relates. |

Thus, most of the withheld documents are not predecisional in that they were not "prepared to assist an agency decision-maker in arriving at his decision." See Assembly, 968 F.2d at 920. Moreover, they are not "deliberative" because they do not implicate NMFS's policy-oriented judgment. See Petroleum Info., 976 F.2d at 1434. The majority of the documents explain, justify, and implement the Council's policy decision; they were not created to help in the formulation of NMFS's policies. Thus, because they are not predecisional or deliberative, the Court concludes that the majority of the withheld documents are not subject to the deliberative process privilege. For those five documents that warrant further consideration, the Court will review them in camera. Without more information, it is not possible to decide whether Plaintiff's need for the documents overcomes any privilege. The Court will wait until after reviewing the documents in camera to decide whether Plaintiff's need overcomes any privilege.

**Conclusion**

The majority of the remaining withheld documents are not privileged. Defendant must produce to Plaintiffs the following documents in unredacted form (with the exception of Document No. 384) within ten (10) calendar days of this order: Document Nos. 267, 270, 271, 272, 273, 276, 281, 286, 309, 313, 329, 338, 340, 376, 377, 384, 385, 388, 389, 391, 392, 397, 398, 400, 407, 421, 423, and 425. The Court will review in camera the remaining five documents – Document Nos. 433, 380, 282, 233, and 339. Defendant must provide the Court with copies of those documents within ten (10) calendar days of this order.

ORDER — 10

The clerk is directed to send copies of this order to all counsel of record.

Filed this 15th day of July, 2008.

/s/ Marsha J. Pechman

Marsha J. Pechman
United States District Judge

ORDER — 11